## Porter *v.* Dawson Bridge Co., Appellant.

| 157 | 367 |
| 30 SC | ²621 |

[Marked to be reported.]

*Bridges—Tolls—Acts of April 17, 1876, April 29, 1874.*

Under the act of April 29, 1874, P. L. 90, as amended by the act of April 17, 1876, P. L. 34, a bridge company cannot charge, in addition to the toll for vehicles, a toll for passengers carried by the vehicle, upon the ground that such passengers are foot passengers.

*Statutory penalties—Tolls—Bridges—Police regulation—Public policy—Excessive fines—Constitutional law—Art.* 1, § 13.

Where an act imposes penalties upon bridge companies for overcharge of toll, the legislative intent is not to reward the persons subjected to the overcharge, but to repress the unlawful practice for purely public reasons, and for that purpose one penalty judicially declared, is sufficient. The courts will not encourage the practice of accumulating a large number of penalties and bringing one action to recover the whole mass.

Defendant, a bridge company, demanded and collected from plaintiff, at five different times, certain sums as tolls due for driving over defendant's bridge, with a two or a four horse vehicle, at various times preceding the several dates of payment. In these sums were included charges for the passengers carried in the vehicle at the rate of two cents for each passenger. During the period of the charges plaintiff carried five hundred and seventy-nine passengers. Plaintiff claimed to recover ten dollars penalty for each overcharge as provided by the act of April 17, 1876, P. L. 90. In the lower court he recovered a verdict and judgment for $5,760. Defendant appealed. *Held,* that as only five payments had been made, defendants should only be subjected to five penalties.

It seems that in such a case it is perhaps doubtful whether any more than one penalty should be allowed.

Query whether the rate claimed would not have been an excessive fine and therefore unconstitutional.

Argued May 8, 1893.    Appeal, No. 387, Jan. T., 1893, by defendant, from judgment of C. P. Fayette Co., June T., 1891, No. 200, on verdict for plaintiff, Samuel E. Porter.    Before STERRETT, C. J., GREEN, MITCHELL, DEAN and THOMPSON, JJ.

Assumpsit for penalties for overcharges of toll.

At the trial, before INGHRAM, P. J., it appeared that plaintiff was a resident of the town of Vanderbilt, and that he ran a hack or omnibus line from that town to the town of Dawson to connect with the Baltimore and Ohio Railroad, and that, in doing so, he was compelled to pass over defendant's bridge.

Between Feb. 4, and April 4, 1891, he carried 579 passengers over the bridge, and was charged by defendant the foot passenger rate for each person carried, in addition to the charges for the vehicles. Other facts appear by the opinion of the Supreme Court.

Defendant offered to show the motive of plaintiff in bringing suit; also that defendant had advice of counsel as to the charge made and that the charge was made in good faith. Objected to, excluded and exception. [14–17]

Plaintiff's points were as follows:

" 1. That under the testimony the plaintiffs are entitled to recover the penalty of ten dollars for each and every time the defendant company collected from plaintiff more than fifteen cents toll for a two horse four wheel vehicle, and more than twenty cents toll for a four horse four wheel vehicle." Affirmed. [2]

" 2. That under all the testimony the plaintiffs are entitled to recover." Affirmed. [3]

" 3. That the defendant company have no right to collect toll more than fifteen cents for each two horse four wheel vehicle, nor more than twenty cents for each four horse four wheel vehicle; and have no right to collect from plaintiff more than said rates by reason of having passengers as a part of his freight or load." *Answer:* Affirmed.] [4]

" [The third point we affirm, for the present, at least, and it not being disputed, gentlemen of the jury, that the company did collect from this plaintiff the amount which the plaintiff claims to have paid to the company, the amount of the penalty would be easily ascertained, and it is claimed by the plaintiff to amount to five thousand seven hundred and sixty dollars, and, with your consent, the prothonotary will now take your verdict for that amount in favor of the plaintiffs.]" [1]

Defendant's points were as follows:

" 1. That under all the evidence in the cause, the plaintiff is not entitled to recover and their verdict must be for the defendant." Refused. [5]

" 2. That clause 2 of section 7 of the act of April 17, 1876, P. L. 34, under which this action was ·brought, was supplied and repealed by the act of May 6, 1887, P. L. 92." Refused. [6]

" 3. That there is no evidence in the cause to warrant the jury in finding that the defendant company ever demanded any greater rate or price for plaintiff's vehicles passing over said bridge than that prescribed in the list of tolls put up at the gate of said bridge." Refused. [7]

" 4. That, under the evidence in the cause, the defendant company collected tolls off plaintiff but five times, and that if plaintiff is entitled to recover at all, there can only be a recovery in this action for five penalties, viz.: fifty dollars." Refused. [8]

" 5. That there is no evidence in the cause showing that the defendant company at the time named in the plaintiff's statement demanded and collected from the said Samuel E. Porter a greater amount than twenty cents for said plaintiff's four wheeled vehicle and four horses attached thereto, passing over defendant's bridge at any one time." Refused. [9]

" 6. That if the evidence discloses any excessive charges for plaintiff's four wheeled vehicle with two horses attached thereto, passing over defendant's bridge, there can be no recovery for them in this action." Refused. [10]

" 7. That the defendant company did not incur the penalties imposed by clause 3 of section 7 of the act of April 17, 1876, P. L. 34, by collecting two cents toll for each passenger conveyed across said bridge in plaintiff's vehicles, in addition to the legal toll for said vehicles." Refused. [11]

Verdict and judgment for plaintiff for $5,760. Defendant appealed.

*Errors assigned* were (1–11) instructions; (14–17) rulings on evidence; quoting instructions, and bills of exceptions.

*S. L. Mestrezat, M. M. Cochran* with him, for appellant.— The act of May 6, 1887, P. L. 92 repealed and supplied clause 2 of sect. 7 of the act of April 17, 1876, P. L. 30, and consequently there could be no action brought on it: Com. v. Cromley, 1 Ash. 181; Bartlet v. King, 12 Mass. 545; Rogers v. Watrous, 8 Texas, 62; Cain v. State, 20 Texas, 364; Pierpont v. Crouch, 10 Cal. 316; State v. Wilson, 43 N. H. 415; Norris v. Crocker, 13 How. 429; Endlich, Interp. Stat. § 200;

Sedgwick, Stat. and Const. Law, 124; Dash v. Van Kleeck, 7 Johns. 477.

Penal laws must receive a strict construction and should not be extended beyond the evident intention of the legislature, as expressed upon their face: Com. v. Standard Oil Co., 101 Pa. 150; Bucher v. Com., 103 Pa. 528; Andrews v. U. S., 2 Story, 203; Schooner Enterprise, 1 Paine C. C. 32; Hines v. R. R., 95 N. C. 434; Potter's Dwarris on Statutes, 247.

It appears by the testimony in the case that defendant charged and collected two cents for each passenger crossing the bridge in plaintiff's hack. It also clearly appears that defendant company did not demand or collect from plaintiff any greater rates of toll for his hack than those prescribed by the act and posted at the bridge. To construe the act of 1876 to mean a "greater or other rate" would be contrary to the rules of construction of penal statutes as laid down in all the adjudicated cases and text books on the subject: Central R. R. v. Green, 86 Pa. 432.

If plaintiff is entitled to recover at all, it can be only for one penalty, at most for no more than five. There was no demand made for the payment of these tolls, but they were paid by plaintiff at five different times. If these payments are construed to be a "collection," then the defendant company is liable for five penalties.

*R. E. Umbel, A. D. Boyd, R. W. Dawson, G. B. Jeffries* and *R. H. Lindsey* with him, for the appellee.—There has been no repeal of the act of April 17, 1876 : Brown v. County Com's, 21 Pa. 43; Malloy v. Reinhard, 115 Pa. 31; Sifred v. Com., 104 Pa. 179; Dwarris on Statutes, 154; Wallace v. Barrett, 41 Barb. 92; McCool v. Smith, 1 Black U. S. 459; Bank v. Com., 10 Pa. 442; Erie v. Bootz, 72 Pa. 196; Wright v. Vickers, 81 Pa. 122; Barber's Election, 86 Pa. 392; Harrisburg v. Sheck, 104 Pa. 57.

The bridge company should have made itself fully acquainted with the law. It was even attempted on the trial to show that the company had been advised by its counsel that it was authorized to collect for every passenger, in addition to the regular toll for the hack. Even if they had been so advised, it would be no defence to this action. The taking of the exces-

sive tolls being the gist of the offence, the intention of the parties is not to be considered: Coates v. Wallace, 17 S. & R. 80; Reynolds v. Smith, 2 Browne, 257; Gibson v. Gault, 33 Pa. 44.

Under the language of the act, a mere demand of excessive toll throws the party liable for the penalty. In this case there was both a demand and a collection, after protest, against paying. The offence was certainly committed every trip the hack made, where excessive toll was charged: Bartolett v. Achey, 38 Pa. 277; Gibson v. Gault, 33 Pa. 44; Central R. R. v. Green, 86 Pa. 432.

OPINION BY MR. JUSTICE GREEN, October 2, 1893:

On February 9, 1891, the defendant demanded and collected from the plaintiff $9.54; on February 24th, $42.03; on March 9th, $42.92; on March 25th, $40.10; and on April 7th, $38.49, for tolls due for driving over the defendant's bridge, with a two or a four horse vehicle, at various times preceding those several dates.

It was alleged by the plaintiff that there were in the aggregate 579 several acts of driving over the bridge, and that at each of those drivings there were passengers in the vehicles, for each of whom, also, a foot passenger's toll of two cents was collected. It was claimed that by the law under which the defendant company was chartered (General Law of 1874, P. L. 73, and supplement of 1876, P. L. 30), a penalty of ten dollars for each offence was imposed, and that, therefore, the plaintiff was entitled to recover five hundred and seventy-nine penalties of ten dollars each, amounting in the whole to $5,790. The court below so directed the jury, and a verdict and judgment for $5,760 were entered against the defendant, who thereupon took the present appeal.

By the second clause of the 31st section of the act of 1874, not changed by the act of 1876, the bridge companies chartered under the provisions of the act were authorized to charge tolls for passage over their bridges not exceeding certain fixed rates prescribed in the act, among which were, for every four wheeled vehicle with two horses fifteen cents, and for the same with four horses twenty cents, also for every foot passenger two cents.

Clause 3 is in the following language : " If the said corporation, or any person employed for it, shall collect or demand any greater rate or prices for passing over said bridge than what is prescribed in the list of tolls put up at the gate as aforesaid, or neglect to keep the said bridge in repair, he or they shall forfeit for every such offence the sum of ten dollars, to be recovered as debts of a similar amount are recovered, one half to be paid to the county, and the other half to the person who shall sue for the same."

The penalty is incurred " for every such offence," and the offence is described in the antecedent words of the section thus : " shall collect or demand any greater rate or prices for passing over said bridge than what is prescribed in the list of tolls put up at the gate as aforesaid." That is, every time the defendant or its agents collected or demanded a greater sum than the prescribed tolls, the offence was committed for which the penalty of ten dollars was prescribed. It is the collecting or demanding the excessive fare or price which constitutes the offence. Now the collecting and demanding the excessive tolls was done each time when the money was demanded and collected, and there were five of these in all. The plaintiff himself testified that he paid the defendant for the first week and after that every two weeks. We do not find any evidence of any demands, but simply of the payment of the money on the five occasions heretofore stated. The plaintiff testified : " I always went to the tollhouse at the end of the bridge and paid it to the toll keeper or toll girl, whichever one was there. Q. Every two weeks you say ? A. Every two weeks ; sometimes it might run a day or two over but would only pay for the two weeks."

There were no other payments made but the five, yet the plaintiff was permitted to recover for 579 payments. Of course as there were no 579 payments the defendant could not be convicted of that number of collections. It could only be convicted of the offence of each collection, and of these there were but five. It is idle to say that because there were 579 passages over the bridge for which the money was paid, therefore there were 579 offences for which the penalty was incurred, because the penalty was only incurred by the collection of the money, and there were but five collections in all. If

there had been but one collection of the whole amount there would have been but one offence, just as, if there had been no collection at all, there would have been no offence.   The statute is penal and must be strictly construed, but it needs no strict construction because there could be no offence without a collection, and therefore there could only be as many offences as there were collections.   We take no account of demands as a separate offence because there were none.

It is of course perfectly clear that the defendant could not lawfully charge for the persons in the vehicles as foot passengers, because they were not foot passengers.   They were simply a part of the load in the conveyance, just as much as wheat, or potatoes, or trunks, or any other kind of loading, and the law gave no right to charge for the loading of a vehicle except by the charge for the vehicle itself.

But notwithstanding all this the defendant was only liable for the penalties because of unlawful collections actually made, and there were not 579 collections made, but only five.   They are therefore liable for five penalties of ten dollars each, making in all fifty dollars.

This ruling is in entire accord with our own decisions and with those of England and our sister states.   Thus in our own recent case of Friedeborn v. Commonwealth, 113 Pa. 242, a summary conviction was had before a magistrate, for six different and distinct violations of the act of 1794, prohibiting worldly employment on Sunday.   The defendant was adjudged guilty of six distinct acts of sale of cigars and other merchandise to six different persons, and the full penalty of four dollars for each offence was imposed.   The court below sustained the convictions and affirmed the judgment.   This court, however, reversed the judgment, holding that there could be but one recovery for all the violations of the act on the same day, although the act provided that, " every such person, so offending, shall, for every such offence, forfeit and pay four dollars to be levied by distress."   We held that there could be but one violation of the law on the same day, no matter how many or how few were the articles sold.   Mr. Justice GORDON said, delivering the opinion: " Moreover, the offence consists in 'performing any worldly employment or business whatsoever on the Lord's day, commonly called Sunday,' so that there is no proscription

of any one or more distinct act or acts, but of any employment or business, whether the act or acts which constitute such employment are one or many. Friedeborn's business was that of a vender of tobacco, cigars, etc., and he was not less a vender, though on Sunday, the 5th of October, he sold but one cigar, nor would he have been more so, had he on that day sold all the goods of which he was possessed. In either case he was engaged in his worldly employment, and that employment could not be changed, or its character altered, by the number of articles sold or the time required for its performance."

It is just so in the present case. The act of collecting the unlawful tolls is the offence prohibited by the statute. Whether that act be the collection of one unlawful toll, or of a hundred, it is but a single act and it constitutes but one offence. There is no law or reason in dividing up the sum collected into as many parts as there were tolls aggregated in the collection, for the mere purpose of multiplying the penalties. The law does not require or justify any such subdivision. What it prohibits is a collection, and a collection is a unit. No matter how many items were included in the collection, if the whole of them were embraced in the one collection but one offence was committed. Just as in the case last cited, the offence was worldly employment on Sunday, but whether the instances of the employment were one or many, but one offence could be committed on the same day.

The same question was decided in the same way in Crepps v. Durden, Cowp. 640. There a baker was convicted of selling small hot loaves of bread on Sunday, and four separate convictions were had for four separate sales on the same day. But Lord MANSFIELD held: "It is but one offence, whether longer or shorter in point of duration; so, whether it consist of one, or a number of particular acts. The penalty incurred by this offence is five shillings. There is no idea conveyed by the act itself, that if a taylor sews on the Lord's day, every stitch he takes is a separate offence; or if a shoemaker or carpenter work for different customers at different times on the same Sunday, that those are so many separate and distinct offences. There can be but one entire offence on one and the same day. . . . Here repeated offences are not the object which the legislature had in view in making the statute; but simply to punish a man for exercising his trade and calling on a Sunday."

It will be seen that our own case of Friedeborn and the forego-
ing case of Crepps go much further than it is necessary to go in
the case at bar. There each act of selling to different parties
was a distinct violation of the law, but because all the acts of
selling were but part of the one prohibited act of exercising a
trade and calling under the English statute, or performing any
worldly employment under ours, there could be but one convic-
tion for all the acts done on one day. But in the case at bar
nothing is an offence but a collection or a demand of the illegal
tolls. The several passages over the bridge included in one
collection are perfectly lawful in every sense, and there is noth-
ing about them, or that relates to them, that gives rise to any
illegality, except the collection of the tolls charged for the pas-
sages, and as the collection is the single illegal act done, it is
but one offence, no matter how many items it embraces.

In the case of Fisher v. N. Y. C. & H. R. R. R. Co., 46 N.
Y. 644, an action was brought to recover twenty-six penalties
of $50 each for the violation of a provision of the railroad law
of the state of New York, which declared that any railroad
company which shall ask and receive a greater rate of fare than
that allowed by law shall forfeit fifty dollars, which sum may
be recovered, together with the excess so received, by the party
paying the same. The plaintiff paid the excessive fare de-
manded by the company on twenty-six different occasions when
he traveled on the defendant's road. The court below gave
judgment for the whole amount claimed by the plaintiff, but
the court of appeals reversed the judgment, and held that only
one penalty could be recovered for all the violations prior to
the bringing of the suit. GROVER, J., in the course of the
opinion, after citing a number of authorities, says : " My con-
clusion is, that but one penalty can be recovered upon the stat-
ute under consideration, for all the acts committed prior to the
commencement of the action. . . . The legislature did not in-
tend to open the door to a practice adopted in a case originating
in another part of the state, now under advisement in this court,
of opening a book account of penalties earned, and delaying
suit for a year, when such penalties amounted to between
$20,000 and $30,000. A construction permitting this would
defeat the intention of the legislature, which was to suppress
the extortion by prompt prosecutions, by enabling parties to

forebear suing until the aggregate of penalties amounted to a large sum, and induce others to do as one of the plaintiffs in one of the cases now in judgment was honest.enough to testify he did: that was, to abandon other business, and spend his time for a considerable period in riding back and forth from Tonawanda to Buffalo for the purpose of earning penalties."

In the case of Parks v. Railway, 13 Lea, 1, the Supreme Court of Tennessee in commenting upon the foregoing decision says: " The decision of that eminent tribunal commends itself to our judgment and sense of justice. To allow a person to open a book account of penalties at an insignificant way-station, and run up a charge of $24,000 for the failure of the conductor to announce the station or the length of stay, of which no passenger has complained, would shock the conscience, pervert the intention of the legislature, and turn a remedial into a highly punitive statute. If the legislature had in the act before us, in so many words, authorized what the plaintiff has done without any notice to the company, it would be difficult to sustain the constitutionality of the statute. For the effect would be the imposition of an excessive fine." In this case the court held that only one penalty could be recovered up to the time of the bringing of the action.

The same point was ruled in the case of Washburn v. McInroy, 7 Johns. 134, which was an action to recover cumulative penalties for a number of violations of the excise laws, and it was held that but one penalty could be recovered for all the violations of the law before the suit brought.

In the case of Central R. R. Co. v. Green, 86 Pa. 427, this court held that only one penalty could be recovered for the act of excluding two persons from a particular car of the defendant under the act of 22d March, 1867, P. L. 38, the exclusion of both being done at the same time. The act gave the whole of the penalty, $500, " to the person thereby injured or aggrieved," and it prohibited the exclusion of " any person or persons on account of color, or race." The persons excluded were a man and his wife. One action was brought and a recovery had for the exclusion of the wife, and another action was brought at the same time for the exclusion of the husband. In the court below a judgment was recovered in the second action, but this court reversed it without a venire, holding that

the act of exclusion was but one act, and although two persons were excluded, but one penalty could be recovered. Mr. Justice PAXSON, delivering the opinion, said: " The fact that several persons may be aggrieved by the commission of a single offence, affords no ground to justify an inference that each may have his suit for the penalty imposed upon its commission, where the plain object of the law is to punish or repress a public wrong rather than to compensate a private injury. The penalty imposed by the act is so disproportioned to any supposable injury in an ordinary case, that we are bound to presume it was intended as a police regulation for the management of railroads, and to have been induced from motives of public policy."

Precisely the same principle applies to the present case. One act of collection of illegal tolls is the offence which is punishable by the penalty of $10.00. Whether that act of collection includes one or many tolls, there is but one offence committed, and for that one offence there is but one penalty of $10.00.

The idea that because penalties were only claimed for entire loads of passengers, and not for each passenger, there should be a difference, and the penalty should be collectible for the whole load though not collectible for each passenger, is entirely void of merit. If the multiplicity of penalties is legally objectionable as to the individual passengers, it is equally objectionable as to whole omnibus loads for the same reason. If one collection entails one penalty it includes all the tolls embraced in the collection, and whether they are computed by the number of individuals, or the number of omnibus loads, is a matter of indifference.

In the case of Hill v. Williams, 14 S. & R. 287, the same principle was applied to an attempt to recover double penalties, for the unlawful marriage of a male and female minor, by a magistrate, under the act of 1729, to prevent clandestine marriages. The father of the female infant brought his action and recovered the penalty. Subsequently the father of the male infant brought his action to recover his penalty as a 'person grieved,' and recovered in the court below. But this court reversed the judgment, holding that the marriage was one act for which but one penalty could be recovered, although the act

gave a penalty to "the person or persons grieved." TILGH-
MAN, J., said : "The object of the law was not so much to make
a compensation to the injured parents (for in many cases fifty
pounds would be no compensation), as. to deter all persons
from being accessory to these clandestine marriages."

In the case of Sturgis v. Spofford, 45 N. Y. 446, it was said:
"Prosecutions for aggregated penalties should not be encour-
aged. Penalties are often incurred inadvertently, or under a
claim of right, and if the prosecution is promptly instituted for
a single offence, it operates as a salutary warning to discontinue
the practice or acts complained of, while delay.may be regard-
ed as an acquiescence in the right of the party to perform the
acts."

In Railroad v. Green, supra, we said: "The inclination of
the courts against multiplying penalties is strong."

In the case at bar the plaintiff opened a book account of pen-
alties, commencing February 4, 1891, and continuing, with
daily entries, until April 5th, a period of sixty-one days, and
in that short time he charged up against the defendant sixty-
one items of account, which he describes as follows: "Violat-
ing said act of assembly two times, $20," etc., varying only in
the dates and number of times and amounts charged. The
number of "violations" charged is 579, and the aggregate of
the penalties, with which the defendant is debited, is $5,790.
This book account of penalties is the cause of action in this
case. If the plaintiff had waited for a year before bringing suit
he would have been entitled at the same rate to about $35,000
worth of violations, which was probably more than the whole
value of the bridge.

The whole idea of the claim appears to be that the act im-
posing the penalties was intended for the private personal ben-
efit of the informer. But this court, and other courts, have, as
we have seen, utterly condemned and repudiated any such pur-
pose in the legislation. The legislative intent is not to reward
the person suing for the penalty, but to repress the unlawful
practice for purely public reasons, and for that purpose one
penalty, judicially declared, is as effective as one hundred. It
would be altogether demoralizing for the courts to encourage
such a practice of accumulating a large number of penalties and
bringing one action to recover the whole mass. The conserva-

tion of the public good does not require it, and the basis of merely individual right upon which it is founded has been distinctly disavowed by the courts.

It will be seen, therefore, that the plaintiff's right of recovery for the whole amount of his claim for "violations," is at war with the plain reading of the act under which it is brought, is contrary to sound public policy, would contravene the legislative intent, and cannot be justified by any private ownership of the penalties sought to be recovered. We have allowed a recovery for five penalties because there were five instances of unlawful collection, though it is perhaps doubtful whether any more than one penalty should be allowed. But the amount is not serious and the act gives the penalty "for every such offence."

This action is not brought to recover the excess of tolls paid over legal rates, but the penalties only, and the plaintiff is entitled to a judgment for fifty dollars to cover the five penalties allowed. We sustain the first, second, third, and eighth assignments of error, we dismiss the fourth, fifth, seventh, ninth and eleventh assignments as not sustained, and we do not consider the remaining assignments because they are immaterial.

The judgment of the court below is reversed as to all the excess above fifty dollars, and judgment is now entered here in favor of the plaintiff and against the defendant for fifty dollars and costs.

[Marked to be reported.]

