Geffen *v.* Baltimore Markets, Inc., Appellant.

Argued January 6, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Wm. A. Schnader*, of *Schnader & Lewis*, with him *Witkin & Egan*, for appellant.

*Henry N. Paul, Sr.*, with him *Henry N. Paul, Jr.*, of *Fraley & Paul*, and *Richard K. Stevens*, for appellee.

OPINION BY MR. JUSTICE DREW, March 22, 1937:

This is an action in assumpsit to recover penalties for twenty-five separate and distinct violations of the Act of June 20, 1901, P. L. 582, as amended, better known

as the Pennsylvania Trade-Mark Act. The jury returned a verdict for $5,000 and, after motions for a new trial and judgment n. o. v. as to $4,800 were dismissed, and judgment entered on the verdict, this appeal was taken.

The plaintiff, Isaac J. Geffen, is a tea merchant, and for many years traded as Geffen Tea Company, during which time he built for himself a substantial and well-known business. Shortly before 1932 he adopted a distinctive and attractive label for the cartons in which his tea was sold, and his product became generally known as "Geffen's" tea.

The defendant, Baltimore Markets Company, a corporation, operating a chain of thirty-one stores located in different districts of the City of Philadelphia, sold "Geffen's" tea in these cartons, with plaintiff's consent, from June 14, 1932, to March 14, 1933, when that arrangement was terminated and defendant notified that it no longer had authority to sell. Defendant then began to sell a different kind, using a carton of its own which obviously was designed to imitate plaintiff's and intended to deceive purchasers into believing they were buying "Geffen's" tea.

On August 28, 1933, the plaintiff registered with the Secretary of the Commonwealth of Pennsylvania, under the Trade-Mark Act, its label, adopted prior to 1932, consisting of an entire tea carton characterized by a distinctive color combination and arrangement of words and symbols, including the name "Geffen's" displayed in Japanese letters.

A week after plaintiff's registration defendant was discovered selling tea in its cartons as "Geffen's" tea at twenty-five of its thirty-one stores. Sales were made at each of these stores to a customer who specifically asked for "Geffen's" tea, by name, the clerk actually selling to him a carton of defendant's tea, sometimes without comment and sometimes with the false statement, "This is 'Geffen's' tea with our own name on it."

The jury found that this fraudulent practice was carried on at twenty-five separate stores in different sections of the City of Philadelphia, and accordingly applied the penalty of $200 prescribed by the Act for each separate and distinct violation thereof, and returned a verdict for plaintiff of $5,000.

On May 2, 1933, the defendant registered with the Secretary of the Commonwealth, under the Trade-Mark Act, a photostatic copy, in black and white, of the carton it had in use. The certificate of registration issued by the Secretary made no mention of colors, thus indicating that it was a black and white label.

The grounds of the appeal are succinctly stated in the Statement of Questions Involved in the brief for appellant. We will consider them in order:

1. "Can the owner of a duly registered trade-mark be sued for a penalty under the Trade-Mark Act, for alleged infringement by the registered trade-mark, of a label afterward filed by the plaintiff for registration without any attempt to have the earlier registration revoked?"

This question must be answered in the affirmative since the facts of the case do not warrant the assumption carried in the question. There is no conflict between plaintiff's and defendant's registrations. Plaintiff does not question defendant's right to make use of its registered trade-mark. There is no similarity, to say nothing of deceptive similarity, between the black and white trade-mark of the defendant and the red, blue and gold label of the plaintiff. The Secretary of the Commonwealth so decided, as it was his duty under Section 1 of the Act to do, when he issued a certificate of registration to plaintiff after having issued one to defendant. This section provides: "No label, trade-mark, . . . shall be recorded that would reasonably be mistaken for the label, trade-mark, . . . already filed of record." For the same reason—because of the utter lack of similarity between them—it would have been futile to have

asked that the earlier registration be revoked. Such a request would certainly have been refused.

2. "Can the penal section of a statute be construed to reach corporations, when persons and corporations are mentioned everywhere in the act except in the penal section, which applies only to persons?"

It is clear from a reading of the entire Act that liability for violation applies in every instance to "a person or persons, copartnership or corporation." Section 3 declares it to be unlawful and a violation for "a person or persons, copartnership or corporation" to commit the following offenses:

(a) "to make any use, sale, offer for sale, or display of the genuine label . . . or any such likeness or imitation thereof as shall be calculated or liable to deceive, . . ." or

(b) "to make any wrongful use whatever of any such genuine label . . . or any such likeness or imitation thereof; . . ." or

(c) "to, in any way, use the name or seal of any such person or persons, copartnership or corporation, or any such likeness or imitation thereof, . . ."

And at a later point that Section provides:

(d) "and it shall be unlawful for any other person or persons, firm, copartnership or *corporation,* to make any use of such label, trade-mark, trade-name, device, shopmark, designation, or form of advertisement, so filed, or any such likeness or imitation thereof, or utter or display the same orally or in any printed or written form in the conduct of his business or in any business transaction, attached to merchandise or products of labor, or detached from and independent of the same, on invoice, letter-heads, bills or advertisements, without express consent, license and authority of the person or persons, copartnership or corporation, so filing the same; and any such license, consent or authority may be revoked and terminated at any time, upon notice, and thereafter any use thereof shall be a violation of this

act, and subject those violating the same to *all the liabilities and penalties herein provided against any violation thereof."* (Italics added.)

The penalties referred to are specifically expressed in Section 4, which declares that for any violation "prohibited or declared unlawful by section 3 of this act, [the violator] shall be subject to a penalty of two hundred dollars, to be sued for in any court having jurisdiction of an action for a fine or penalty, by any person or persons, copartnership or corporation, aggrieved in the matter; . . ." It is true that Section 4 mentions only "a person or persons" as being liable for the penalties prescribed. The omission of "copartnership or corporation" was obviously a mistake, not intended by the Legislature. A reading of the Act as a whole conclusively shows this. It is unthinkable that the legislative intention was to render the penalty section of the Act unenforceable against corporations. There is no possible reason in law or logic for such an exception. Even if this omission were intentional, it would not bar plaintiff here since he seeks recovery under Section 3 which expressly embodies "all the liabilities and penalties" of Section 4 and applies them to corporations by express inclusion.

The defendant committed the offenses designated above by (a), (b), (c) and (d) which are declared unlawful whether performed by a "person or persons, copartnership or corporation." The jury found to this effect and the verdict was substantially supported by the evidence. The testimony shows that on different occasions in twenty-five stores operated by the defendant, "Geffen's" tea was asked for and a different product sold in a package of almost identical size, with the same color scheme and style of writing as the genuine "Geffen's" carton. In some instances the clerk asserted that the tea was "Geffen's" and that it was being sold under defendant's name. All of the twenty-five sales violated (d) in that each was made after the authority to sell

"Geffen's" tea had been revoked, and also because the tea sold was represented as "Geffen's." The question of deceptive similarity is one of fact. On appeal from dismissal of a motion for judgment n. o. v., all facts and inferences must be resolved in favor of the party for whom the verdict was rendered: *O'Farrell v. Mawson,* 320 Pa. 316. In this light it is proper to say the jury found that the carton of the defendant was deceptively similar to that of the plaintiff. Since the evidence on this point was substantial, there was no error in refusing a new trial.

While the cartons are not exactly similar, the test is whether or not the resemblance is such as would be likely to deceive purchasers of the perceptive and analytical capacity ordinarily encountered in the usual course of business in the particular trade. Worded otherwise, is the resemblance likely to deceive an ordinary purchaser of the article, leading him to believe he was purchasing someone else's goods? This was so before the Act of 1901 *(Pratt's Appeal,* 117 Pa. 401; *Heinz v. Lutz,* 146 Pa. 592) and is the law to-day: *B. V. D. Co. v. Kaufmann & Baer Co.,* 272 Pa. 240; *Klepser v. Furry,* 289 Pa. 152. The true criterion is the effect of the ensemble. Comparison, of course, discloses differences, but the average purchaser does not have the advantage of actual comparison. He is more likely to observe general similarities than notice specific differences. Especially is this true where, as here, while there are differences, the general appearances are almost identical. The differences are of the kind usually introduced where there is an attempt to make use of an established trade-mark, and at the same time so far depart therefrom as to possibly avoid liability. No legal argument can strengthen the conviction of deceptive similarity between the two cartons that arises from the mere sight of them.

3. "Under a clause inflicting a $200 penalty for any violation of the preceding provisions of the Trade-Mark

Act, can cumulative penalties be awarded to the plaintiff for every package of merchandise sold in a box claimed to infringe a label, especially when the act provides, in addition, for the collection of damages for, and the forfeiture or profits accruing from, an infringement?"

The answer depends entirely on the language of the Act. As a general rule, courts are loath to permit cumulative penalties. This policy has been expressly recognized by this Court: *Central Railroad Co. of New Jersey v. Green*, 86 Pa. 427; *Porter v. Dawson Bridge Co.*, 157 Pa. 367. Nevertheless, where it is plainly the intention of the Legislature to allow a plaintiff to recover a penalty for a definite act, courts will enforce the penalty for each act: *Bartolett v. Achey*, 38 Pa. 273; see *Commonwealth v. Cooke*, 50 Pa. 201; *Porter v. Dawson Bridge Co.*, supra. It is true that in each of these cases the statutes involved specifically provided a penalty for "every" offense; it is equally true that the language of the statute here clearly compels a similar result. As plainly as words can express it, a penalty of $200 is imposed on one wrongfully performing "any act" expressly prohibited or declared wrongful under Section 3. This clearly means "every act." Irrespective of the words chosen by the Legislature, the courts of Pennsylvania have consistently held that the penalties provided by penal statutes are incurred according to the number of truly separate and distinct transgressions: *Bartolett v. Achey*, supra; *Friedeborn v. Commonwealth*, 113 Pa. 242; *Porter v. Dawson Bridge Co.*, supra; see also the opinion of Lord MANSFIELD in *Crepps v. Durden*, 2 Cowper 640.

A distinction is drawn between cases where "the penalty is imposed in respect of a complex and continuous act and those where it is imposed in respect of a single uncomplicated offense which is complete and may be proved by evidence of one isolated act": *Milnes v. Bale*, L. R. 10, C.P. 591. So where a statute forbade worldly

employment on Sunday, there could be but one offense regardless of the number of sales made: *Friedeborn v. Commonwealth,* supra. On the contrary, where a penalty is imposed for the taking of illegal fees *(Bartolett v. Achey,* supra) or for the collection of unauthorized tolls *(Porter v. Dawson Bridge Co.,* supra), each taking and each collection constitutes a single complete offense. In this case there were twenty-five separate sales in twenty-five different stores at as many different times. Each sale constituted a separate and complete violation of the Act. While all the stores were owned by the defendant, each was a complete unit drawing its trade from patrons not likely ordinarily to purchase from any of the other twenty-four units. We have no doubt the intention of the Legislature was to exact the penalty for each such violation, and, as said before, such intention is all controlling.

The application of the statute to the facts of this case does not violate Article I, Section 13, of the Pennsylvania Constitution, prohibiting the imposition of excessive fines. This section applies only to criminal proceedings: *Chester School District's Audit,* 301 Pa. 203, 220. We have declared, however, that the legal principle embodied in this provision is applicable to all proceedings, civil as well as criminal: *City of Scranton v. People's Coal Co.,* 274 Pa. 63, 71. Since this is not a criminal prosecution the Constitutional provision has no application. Nor was the judgment below contrary to the legal principle that excessive penalties will not be favored by the law. We do not regard the penalties as excessive.

We find no merit in the contention that plaintiff should have sought his penalties in the equitable proceeding which was brought to restrain defendant from further violation. The principle that equity, once jurisdiction is obtained, will grant full relief, does not extend to recovery of the statutory penalty, because the Act itself specifies that the suit must be brought "in any

court having jurisdiction for a fine or penalty": *United Drug Co. v. Kovacs,* 279 Pa. 132; *B. V. D. Co. v. Kaufmann & Baer Co.,* 279 Pa. 152.

Judgment affirmed.