# The Commonwealth *versus* Jay Cooke *et al.*

*Act* 16*th May* 1861, *relating to bankers and brokers, construed.*—*Penalty for not making* return *of profits, and* report *of name, location, and capital, incurred for each neglect.*—*Interest on penalties, when allowed.*

1. Under the Act of May 16th 1861, brokers and private bankers who fail to make a return of the profits of their business, and also a report of their names, places of business, and capital employed, are liable to the penalty imposed by the third section for each neglect, and not to a single penalty only as for one offence.

2. Though ordinarily a penalty does not bear interest, yet where the double penalty incurred was duly settled by the auditor-general and state treasurer, interest would run three months after the date of such statement, under section 35 of the Act of 30th March 1811, on the balance thereby found to be due.

ERROR to the Common Pleas of *Dauphin county.*

This was an appeal by the defendants, Jay Cooke & Co., from the settlement, made June 5th 1862, by the auditor-general and state treasurer, under the Act of May 16th 1861 (P. L. 1861, p. 708), wherein they are charged with two penalties of $1000 each, as provided by the 3d section of said act; the first for neglecting or refusing to make the return required by the 1st section, and the second for neglecting or refusing to make the report required by the 2d section of said act.

At the time of the passage of this act, as well as for some years both previous and subsequent thereto, the defendants were engaged in business, in the city of Philadelphia, as stock, bill, and exchange brokers, and private bankers. They made no return or report whatever under said law. On the 5th day of June, A. D. 1862, the auditor-general and state treasurer settled the following account against them, to wit:—

[The Commonwealth *v.* Jay Cooke *et al.*]

Jay Cooke & Co., Philadelphia,
*In account mith the Commonwealth of Pennsylvania,*      Dr.
For penalties incurred under the 3d section of the
  Act of Assembly, entitled "An Act relating to
  brokers and private bankers," certified May 16th
  1861, viz: For neglecting or refusing to make
  return to the Auditor-General, as required by the
  1st section of the said act . . . . . . . . . $1,000 00
For neglecting or refusing to make return to the
  Auditor-General, as required by the 2d section of
  said act . . . . . . . . . . . . . . . . .  1,000 00
                                                 ————————
  Due Commonwealth . . . . . . . . . . .  2,000 00
                                                 ————————

Auditor-General's Office, ⎱        Treasury Office,          ⎱
Harrisburg, June 5th 1862. ⎰   Harrisburg, June 5th 1862. ⎰

Approved and entered :              Approved :
      Thos. E. Cochran,                   Henry D. Moore,
              Auditor-General.                  State Treasurer.

From this settlement the defendants duly appealed to the Court
of Common Pleas of Dauphin county.   Upon the issues raised
at the trial, the jury, under the direction of the court, rendered
a special verdict for the plaintiff for $2267.59, provided the
defendants had incurred a double penalty under Act of May 16th
1861, ahd for $1133.79, if they were liable for one penalty only,
provided the settlement bears interest from three months after its
date, as provided by Act of 1811; otherwise, if liable to two
penalties, they find $2000, and, if but for one penalty, $1000.
   On the 29th December 1864 the court directed judgment to
be entered for the Commonwealth for the single penalty of $1000,
without interest until judgment rendered, and delivered the fol-
lowing opinion :—
   "The defendants, private bankers in the city of Philadelphia,
were charged at the accounting office of the Commonwealth with
a penalty of $1000 for failing to render an account of the profits
of their business, under the 1st section of the Act of May 16th
1861, 'relating to brokers and private bankers;' also, for a
further penalty of like amount, under the 2d section of the same
act, for failing to report to the auditor-general the names of the
persons composing their firm or partnership.   From the settle-
ment made by the accounting officers of the state, under the 3d
section of the Act of Assembly, the defendants entered an appeal,
and, on the trial of the cause, the jury, under the charge of the
court, rendered a special verdict, as appears by the record.
   "This verdict presents two questions for our consideration:

First, can a double penalty be imposed under the statute? and, second, will the penalty bear interest after the expiration of three months from the day of settlement, under the Act of 1811?

"The declaration under which the cause was tried, although very defective in form, clearly claims a double penalty. We shall not stop to inquire whether the *narr*. as filed is sufficient in law or not, as we are inclined to believe that none is necessary on appeals, and this, if vicious, is perhaps cured by the verdict. Besides, no exception has been taken to the pleadings. It is conceded that the defendants are subject to one penalty of $1000, under the 3d section of the act, but it is contended that the statute does not impose a double penalty for its violation. It is a maxim of the law, 'that penal statutes must be construed strictly,' and no one can doubt but that the present act comes within that category. Yet, while the courts concede the truth of the general maxim, they must take care to carry into effect the actual intention of the legislature, and not, by a forced construction or verbal nicety, exonerate those who come within the plain meaning of the law. We must refuse on the one hand to extend the punishment to cases not clearly embraced by the act, and on the other to permit offenders to escape by critical technicalities: Sedgwick on Statutes, 326 and following.

"In the language of Judge Story, 'we are undoubtedly bound to construe penal statutes strictly, and not to extend them beyond their obvious meaning by strained inferences.' On the other hand, we are bound to interpret them according to the manifest importance of the words, and to hold all cases which are within the words and the mischiefs, to be within the remedial influence of the statute: 1 Gall. 114, 117, 118. Laws of this character are to be fairly construed and faithfully applied, according to the intention of the legislature, without unwarrantable severity on the one hand, or equally unjustifiable laxity on the other; in cases of doubt, the court inclining to mercy: Sedgwick 334. The case must come clearly and substantially within the letter of the act, else the court might punish cases never intended by the legislature, or beyond its intention: Dwarris on Statutes.

"Now, with these general principles before us, how shall we interpret the law under consideration? The 1st section of the act requires a return to be made of the business done, and set forth the amount thereof, and pay three per centum of a tax thereon into the state treasury. The 3d section requires a report of the names composing the firm, or of the individuals engaged in the business. It must be conceded that these sections command the performance of distinct duties. The 3d section imposes the penalty in these words: Any stockbroker, &c., 'who shall neglect or refuse to make the return and report required by the 1st and 2d sections of this act, shall, for every such neglect or refusal,

be subject to a penalty of $1000, which penalty shall be collected on an account settled by the accountant officers, as taxes on bank dividends are now settled and collected, and shall not be relieved from paying the amount which he is liable to pay to the Commonwealth, under the provisions of the 1st section of this act, on account of having been compelled to pay the said penalty.' The word ' return' is best applicable to the duties required by the 1st, and ' report' to those commanded by the 2d section; yet, when the law comes to impose the penalty, it speaks of ' a penalty of $1000' for every neglect or refusal to perform the duties required by the 1st and 2d sections; and again it says, ' which penalty' shall be collected on an account settled, &c. In the latter part of the section, the ' said penalty' is again used in the singular number, but that gives us but little light, as it refers to the duty to be performed under the 1st section alone. On the whole, I am of the opinion that we cannot, in accordance with the rules prescribed for construing penal statutes, impose more than one penalty of $1000 for a breach of this law. Penal statutes must be taken literally in defining and setting down the crime and the punishment, says Dwarris, p. 634, edition of 1848; and from that to page 642, he gives us references to the various cases decided from time to time. We cannot, therefore, without a departure from the rules prescribed for construing penal statutes, bring a penalty within what might be considered the equity of the law, which does not come within the letter. If the legislature wishes to prescribe a double penalty, it should do it by plain and explicit language, not leave it to be made out by construction and intendment. It is very true, a double duty is directed, but a single penalty is imposed for its breach. It has been argued that if the defendants should merely report the names of the firm, refusing to render any account of their business, or pay the tax imposed, by our construction they would escape the penalty. Such is not our opinion. On the contrary, a violation of the duty prescribed by either section subjects the party to the penalty. It is like the rule laid down by a higher law, that he who breaks it in the least is guilty in the greatest, and he who offends in any one particular is guilty in all. Had the duty of making payment been thrown into another section, and it had been referred to in connection with the penalty, as are the duties prescribed by the 1st and 2d, the party would be subject to the penalty, although he had reported the names of the firm, and stated a full account of the business, yet failed to make payment; and a neglect or refusal to do all, would subject him to no greater penalty. If the one prescribed is inadequate, it is for the legislature to increase it, or impose an additional punishment, in explicit terms. The court cannot make the law, nor extend it by construction.

" Second. Does this settlement bear interest ? Here we might

[The Commonwealth v. Jay Cooke et al.]

premise that if the court is right in the first position, the question under consideration cannot arise ; for the settlement having been overturned by a reduction of the amount on the trial, the sum now found will not bear interest until judgment rendered.   But other cases depend on the same principle, and we will give our views in the present, that both points may be reviewed at the same time.

" That a penalty will not carry interest when sued for in a common-law court is very clear.   No damages can be given for its detention, and interest is given by way of damages: 1 Boll. Abt. 574 ; 4 Burrows 2018, '22.   Our own Supreme Court has so decided in several cases, the last of which is Bank of Chambersburg v. The Commonwealth, 2 Grant's Cases 384.   That case was first brought into this court on appeal, and we held, on full consideration, that interest could not be recovered, but ultimately dismissed the proceeding, on the ground that the penalty imposed could not be collected by a settlement at the department.

" We again decided in The Commonwealth v. Drexel, under this same statute, that the settlement would not carry interest, but that ruling, although acquiesced in, was hastily made at the close of the charge.   We have now an opportunity of re-examining the subject with more care on this special verdict.   The ground for the claim of interest is, that the Act of 1861 provides that ' the penalty shall be collected on an account settled by the accountant officers, as taxes on bank dividends are now settled and collected,' and the 35th section of the Act of March 30th 1811, relating to ' Public Accounts,' declares ' all balances due the Commonwealth on accounts settled agreeably to this act, shall bear interest from three months after the date of settlement until paid.'   It cannot be doubted but that the balance found due the state, on the settlement of bank dividends, will bear interest after three months, but that is not conclusive of the present case.

" When the law declares that these penalties shall be settled and collected as are taxes on bank dividends, it does not follow that it shall be subject to all the incidents of such settlements. There are ample matters on which these words may operate, without introducing so great an innovation on the common law as to give interest on a penalty before judgment rendered.   It is to be settled by the same officers, subject to like decision by the governor, in case of disagreement ; the same notice to be given in order to render it conclusive, and like time for taking an appeal, with similar form of exceptions to be filed, and the money to be collected by a suit in this court if no appeal is taken.   It may possibly come within the letter of the law, but not within the spirit and intention.   The Act of 1811 speaks of ' balances' found due the Commonwealth on the settlement, which clearly imports an account in which there may be partial payments, or claims on both

[The Commonwealth *v.* Jay Cooke *et al.*]

sides, and a balance struck, which can scarcely be predicated of a proceeding to collect a penalty, even on a settlement by the accountant officers. It has often been declared that the best construction of a statute is to construe it as near to the rule and reason of the common law as may be, and by the course which that observes in other cases: 6 Wilson; Bacon's Abr. 383, title *Statutes*. In all doubtful matters, and where the expression is in general terms, statutes are to receive such a construction as may be agreeable to the rules of the common law in cases of that nature. In all general matters the law presumes the act did not intend to make any alteration: Id. 384. Acts of Parliament, in what they are silent, are best expounded according to the use and reason of the common law: 1 Stra. 45; 11 Mod. 150. A thing within the letter of a statute is not within the statute unless it be within the intention of the makers: Bacon's Abr. 385, with numerous examples given. Our own Supreme Court has frequently recognised this rule of expounding statutes, as near to the provisions of the common law as their words would bear. Although the Act of 1861 is a great innovation of the common law, in providing that a penalty shall be collected from a citizen or firm by means of a settlement at the department, yet we do not feel ourselves authorized to say that still greater or other innovations shall follow as an incident, and that the penalty, when thus stated, shall bear interest after three months, especially when by taking an appeal the sum never became a judgment until trial in court. We cannot believe that such was the intention of the legislature, or is the fair meaning of the Act of Assembly.

"We shall therefore give judgment in favour of the Commonwealth on the special verdict, for the single penalty of $1000, without interest until judgment rendered."

This writ was then sued out for the Commonwealth, and the following errors assigned:—

The court below erred in deciding—1. That the defendants were liable to a single penalty of $1000 only, and in entering judgment accordingly on the special verdict.

2. That the amount finally found to be due on the account settled did not bear interest from three months after the date of settlement, but only from the time of the rendition of the judgment.

*Wm. M. Meredith*, Attorney-General, for the Commonwealth.

*H. M. Graydon*, for defendant.

The opinion of the court was delivered, May 24th 1865, by

AGNEW, J.—This case arose under the Act of 16th May 1861, P. L. 708. Jay Cooke & Co. having neglected to make a return

under the first section, and a report under the second, the auditor-general and the state treasurer, on the 5th of June 1862, settled an account against them, charging them with a penalty of one thousand dollars for *each* neglect. An appeal having been taken to the Court of Common Pleas of Dauphin county, that court held that but one penalty could be recovered for *both* neglects, and also that no charge for interest could be made. We think, in this, the learned judge, who is usually very correct, fell into error.

It is true, that a penal law must be construed strictly, and according to its letter. But this strictness, which has run into an aphorism, means no more than that it is to be interpreted according to its language. *Literal* interpretation is but a figurative expression, meaning, perhaps, that we are to adhere so closely to the language we are not to change the signification by dropping even a letter. The purpose of the rule is to prevent acts from being brought within the scope of punishment, because courts may suppose they fall within the spirit of the law, though not within its terms. To create offences by mere construction is not only to entrap the unwary, but to endanger the rights of the citizens. But in the case before us it is wholly unnecessary to run away from the language of the act. It is a question of interpretation and not of construction, and we have only to say what the very words mean.

The provision is, that every " banker or broker who shall neglect or refuse to make the return and report required by the first and second sections of this act, shall, for every such neglect or refusal, be subject to a penalty of one thousand dollars." Adhering, then, to the words of the law, to what did the legislature refer when it said " shall for *every such neglect or refusal* be subject to a penalty"? It is to be observed it is the language of reference, and we are therefore, by the words themselves, sent to inquire for the delinquencies referred to. But the moment we start off on this errand, we discover that the reference is to a return, to be found only in the first section, and to a report, provided for only in the second, and that they differ widely. Each is indispensable—the report, that it may be known to the Commonwealth who is liable to taxation; the return, that the means of assessing the tax may be furnished. The report is once for all time the party may continue in business; the returns annually until he ceases. It is clear that the offences being different in kind, independent in act, and distinct in time, each is liable to punishment. When the legislature therefore said, every such neglect or refusal should be the subject of a penalty, it becomes very plain it did not refer to a *joint* neglect of *several* acts impossible of simultaneous performance. Had the word " every" been omitted, the language might have been dubious, but with it before us, as a part of the very

[The Commonwealth *v.* Jay Cooke *et al.*]

letter of the act, we are admonished by the reference to resort to separate sections to ascertain the neglect or refusal referred to, and thus compelled to give the distributive word *every* a reference to each : *reddendum singula singulis.*

We think that under the 35th section of the Act of 30th March 1811, interest should have been allowed, beginning to run from the end of three months from the time of the settlement. It is not denied·that a penalty generally bears no interest before judgment. But a judgment which ascertains the liability bears interest. So here the legislature has said the balance of a settled account shall bear interest after three months from the date of settlement. The settlement ascertains the debt which the party owes to the Commonwealth. The balance is the sum found due., When the legislature provided that this penalty should be collected on an account settled by the accountant officers, as taxes on bank dividends are now settled and collected, it fixed the mode of procedure governed by the Act of 1811. There is no reason, therefore, to exempt this case from the provisions in the 35th section as to interest. By the settlement the penalty becomes a debt, and the balance in the settlement bears interest as other debts thus ascertained. Now, unless the appeal of the debtor opens this settlement to the prejudice of the Commonwealth, clearly the time of the commencement of the interest being fixed by the law on the actual debt of the debtor, there is no just principle which can relieve him. The legislature has determined the right of the Commonwealth to have interest on all such settled demands. Then can it be tolerated, that when a debtor makes an unfounded appeal, and is at last condemned to pay all that was settled against him, he can make a virtue of his own wrongful delay to escape payment of what he justly owes as interest? We think not, and that he should pay interest as well as debt.

The judgment of the court below is therefore reversed, and judgment is now entered for the Commonwealth for $2267.59, the largest sum found by the verdict, with interest from the 28th day of November, A. D. 1864.