# Walnut Coal Co. v. Pennsylvania Railroad Co., Appellant.

*Practice, C. P.—Pleading—Averment of two causes of action—Demurrer—Waiver.*

1. Where a statement of claim sets out two distinct causes of action, and the defendant fails to object by demurrer, but files the general plea, he cannot thereafter compel the plaintiff to elect as between the two causes of action averred.

*Railroads—Carriers—Discrimination as to car supply—Act of June 4, 1883, P. L. 72.*

2. In an action against a railroad company to recover damages for injuries alleged to have been sustained by the plaintiff from a discrimination against it in the matter of a supply of cars in violation of the Act of June 4, 1883, P. L. 72, a verdict and judgment for the plaintiff cannot be sustained where the evidence shows only a negative reply to an application by the plaintiff to the defendant for permission to purchase and use on defendant's line a number of wooden coal cars of a kind used by other coal operators which the plaintiff had an executory contract to purchase.

3. In such a case the mere assertion by the railroad company of its rights to exclude from its tracks the cars which plaintiff proposed to buy entailed no loss or injury. Until the plaintiff was in actual possession of the cars it proposed to offer for service it was open to the defendant to retreat from the position it had taken if it so desired; it was equally open to the plaintiff to abandon its scheme of providing itself with private cars. The claim for damages therefore rests on nothing better than a pure hypothetical basis, since the injury complained of was never actually realized.

4. The Act of June 4, 1883, P. L. 72, is a highly penal one, and is to be strictly construed.

5. The Interstate Commerce Act does not deprive the courts of Pennsylvania of jurisdiction to entertain actions at common law, or under the Act of June 4, 1883, P. L. 72, for the recovery of damages for injuries caused by discrimination on the part of a common carrier although such discrimination relates to a supply of cars used in interstate commerce. As long as Congress has not legislated specifically with reference to such litigation the Federal and State jurisdictions are concurrent.

Argued April 18, 1912.   Appeal, No. 75, Jan. T., 1912, by defendant, from judgment of C. P. Clearfield Co., Dec. T., 1909, No. 202, on verdict for plaintiff in case of Walnut Coal Co. v. Pennsylvania Railroad Company.   Before FELL, C. J., MESTREZAT, ELKIN, STEWART and MOSCHZISKER, JJ.   Reversed.

Trespass to recover damages for alleged unlawful discrimination.   Before SMITH, P. J.

At the trial the court overruled a motion made by the defendant to require the plaintiff to elect upon which

account it would proceed to trial, the statement of claim including a claim for penalties under the Act of June 4, 1883, prohibiting unjust discrimination, and a claim based upon the alleged failure of the defendant to comply with the common law obligation to have and maintain an adequate equipment for the transportation of traffic tendered to it. (1),

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $78,468. Defendant appealed.

*Errors assigned,* among others, were (1) overruling defendant's motion as above, and (9) answer to defendant's point, the point and answer being quoted in the opinion of the Supreme Court.

*Francis I. Gowen* and *John G. Johnson,* with them *Thomas H. Murray, James P. O'Laughlin* and *Hazard Alex. Murray,* for appellant.—The State Act of 1883 is inoperative because of the interstate commerce acts of the Congress of the United States.

Even if the Act of June 4, 1883, had any application to the present case, the plaintiff failed to establish any undue or unjust discrimination on the part of the defendant, prohibited thereby: Northern Pacific Ry. Co. v. State of Washington, 222 U. S. 370; Hoover v. R. R. Co., 156 Pa. 220.

*A. M. Liveright* and *A. L. Cole,* for appellee.—Discrimination of defendant was undue and unjust, of the character forbidden by Act of June 4, 1883, and no sufficient answer thereto was made at trial.

The defendant had no right to call upon plaintiff to elect between two causes of action embodied in its statement of claim: Burkholder v. Beetem, 65 Pa. 496; Whitney v. Haskell, 216 Pa. 622.

OPINION BY MR. JUSTICE STEWART, October 14, 1912:

The statement of claim filed in this case sets out two distinct causes of action; one, the alleged failure of the defendant to furnish the plaintiff with sufficient cars required for its business; the other, that the defendant had unlawfully discriminated against the plaintiff in transporting over its lines the private cars of other coal producers as well as its own cars employed in like traffic, while denying like service to the plaintiff under the same conditions. Since none of the rulings of the court with respect to the first complaint are assigned for error, it calls for no consideration at our hands. If the joinder of the two was not in accord with the rules of practice, such circumstance might have availed the defendant on demurrer; but with the general plea entered, the right to object was gone and the plaintiff could not thereafter be compelled to elect as between the two. This disposes of the first assignment of error, and brings us directly to the more serious question in the case, arising upon these facts. The plaintiff being without cars of its own was entirely dependent upon the defendant railroad company for cars in which to transport its coal to market, differing in this respect from many other operating companies in the same region, which, while entitled to a ratable allotment of cars owned by the railroad company, had in addition their own private cars which they were permitted by the railroad company to employ. Beginning with the period covered by the action, the plaintiff company, not because the defendant had discriminated against it in the matter of the distribution of its own cars, but solely with a view to enlarge its facilities for shipment in cars furnished by itself, made application through its president to the Huntingdon & Broad Top Railroad Company for the purchase from it of two hundred cars of like character and description with those employed by other operators on the lines of defendant and by defendant itself. The negotiation was between the president of

the plaintiff company and the superintendent of the Huntingdon & Broad Top Company in the latter's office at Huntingdon. The president's testimony on this branch of the case was as follows:

"Q. State whether or not you arranged to buy any private cars, on condition that the Pennsylvania Railroad Company would permit them on the line?

A. I did.

Q. When was that done and where?

A. That was in Mr. Gage's office at Huntingdon.

Q. How many cars?

A. Two hundred cars.

Q. What kind and class?

A. Sixty thousand capacity wooden cars.

Q. Where were those cars that you bargained for?

A. They were, I presume, on the road at the time, and Mr. Gage said they could be inspected on the long siding as they came in.

Q. Was there any price struck?

A. Yes, sir.

Q. How much?

A. Three hundred dollars a car.

Q. What condition did Mr. Gage attach to a sale to you?

A. No particular condition, except the price.

Q. Any condition with reference to the railroad company other than the one you have stated?

A. Yes, sir; he told me he could not sell them without the Pennsylvania Railroad Company's permission. That might have been his words.

Q. With the consent of the railroad, what did he say he would do?

A. Sell them."

Immediately following the president of the plaintiff company wrote the general manager of the Pennsylvania Railroad Company as follows, under date of 25 July, 1904:

"Dear sir: We beg to ask whether or not the purchase of either one hundred or two hundred standard 60,000 capacity hopper gondola cars for individual use would be agreeable to your company, and, if so, what arrangement can be made for handling the same? These cars are now being operated on your system and will be subject to your inspection before purchase."

To this letter the general manager replied as follows, under date of 26 July, 1904:

"Dear Sir: Referring to your letter to me on July 25, we would not care to consider the operation on our line of any 60,000 pounds capacity hopper gondola cars. If the present owners desire to sell, it should be with the understanding that these cars would not be operated on our lines. You will understand that this is a position we are taking in regard to our own cars, that is, we are selling as many as it is possible for us to do, but in every case it is with the distinct understanding and by agreement that they shall not be operated on the Pennsylvania lines."

There was no further correspondence between these parties until 3 December, 1904, when the president of the coal company wrote the general manager complaining that other operators were making their usual shipments, while the plaintiff company was practically eliminated from the business for want of proper facilities. The following extract from the letter gives all that is here pertinent:

"We had the opportunity to purchase and operate ourselves a certain number of individual cars. You declined to grant this privilege, but, notwithstanding this fact the same cars are being operated all over your system to-day. Not only are these cars being operated but identically the same cars are being operated by the Berwind-White Coal Mining Company, the Pennsylvania Coal & Coke Company and others whom I might mention."

The proposed purchase of the cars was never concluded because, as plaintiff alleges, of the refusal of the defendant company to permit their use upon its lines. It is complained that this was an undue and unreasonable discrimination, offending against the Act of Assembly of June 4, 1883, which provides as follows:

"Sec. 1. That any undue or unreasonable discrimination by any railroad company or other carrier, or any officer, superintendent, manager or agent thereof, in charges for or in facilities for the transportation of freight within this State, or coming from or going to any other state, is hereby declared to be unlawful.

Sec. 2. Nor shall any such railroad company or common carrier make any undue or unreasonable discrimination between individuals, or between individuals and transportation companies, or the furnishing of facilities for transportation. Any violation of this provision shall make the offending company or common carrier liable to the party injured for damages treble that of the injury suffered."

We will assume, without deciding, that, under the circumstances disclosed by the evidence, if the plaintiff had in its control and subject to its exclusive use a given number of cars corresponding in make and condition to those which the defendant was transporting for others, the defendant would have been without justification in refusing the service demanded of it. We will further assume, without deciding, that the negotiation between the plaintiff and the Huntingdon & Broad Top Railroad Company amounted to a contract for the sale and purchase of two hundred such cars. These concessions yield points which were earnestly contended for on one side and as earnestly disputed on the other. We make the concessions for the purpose of the argument. Notwithstanding their liberality it may readily be seen how incomplete they leave the plaintiff's case with respect to that branch of it we are now considering. Except as supplemented by facts which not only do not

appear, but which evidently have no existence, the plaintiff's case must rest upon a purely hypothetical basis. With nothing more in the case that we have conceded, a recovery by the plaintiff would necessarily assume, without the slightest evidence, that the plaintiff could and would have complied with the terms of the contract with the Huntingdon & Broad Top Railroad Company; and, what is equally important, that the Huntingdon & Broadtop Railroad Company would not have failed to deliver the cars. In either event what would have legally resulted? Simply a claim for damages against the party in default. Specific performance of the contract between the parties could not have been enforced by either. What stronger position then did the plaintiff occupy because of its contract than it would have been in had it simply shown that the same kind of cars were procurable in the general market? The case as exhibited presents this situation—plaintiff having no cars of its own inquired of the defendant whether, in case it obtained some answering a certain description, the defendant would permit of them being used in plaintiff's service upon its lines; the defendant company refused, accompanying its refusal with reasons which may or may not have been a justification of its action,—a question which the parties were alike qualified to decide, each for itself—thereupon, the question between them at this point being one of rights, for reasons left entirely to conjecture, plaintiff surrendered whatever advantage it had under its contract without having once reached a position with respect to the cars that would have enabled it to exercise the right it demanded had the right been conceded by the defendant. It is not with abstract rights we are here dealing but with a question of injury which is made the basis of the present action. What is complained of is injury that resulted from undue and unreasonable discrimination in denying plaintiff facilities for the transportation of freight which defendant had extended to others. The reference is to the fact that

some shippers were employing their own cars in the transportation of coal, and that plaintiff was denied the privilege of using its privately owned cars in like business. If plaintiff had no such cars, where was the discrimination and where was the injury? A mere refusal to admit or recognize a right in another cannot in itself be made the subject of a legal action for damages. There must be injury to redress before the law will take cognizance of the dispute. Especially so when the claim is under the specific act we are considering, which makes the offending party liable to the party injured for damages treble the amount of the injury suffered. The mere assertion by the defendant of its right to exclude from its tracks the cars which plaintiff proposed to buy entailed no loss or injury. Until the plaintiff was in actual possession of the cars it proposed to offer for service, it was open to the defendant to retreat from the position it had taken if it so desired; it was equally open to the plaintiff to abandon its scheme of providing itself with private cars; and so we repeat that the claim for damages in this case rests on nothing better than a pure hypothetical basis, since the injury complained of was never actually realized, certainly not through any discrimination by the defendant. If loss resulted to the plaintiff it is to be referred to its own failure to put itself in position where it would have had a right to demand equal facilities. If it failed to do this because of greater confidence in the strength of defendant's position than its own, with regard to their respective rights in the matter, it was a case of damnum absque injuria.

Not only does the case as exhibited fail to show violation of the letter of the statute of June 4, 1883, but we fail to see anything in it that offends against the spirit of that act. Even were it contended otherwise a sufficient answer would be that the statute is a highly penal one and is to be strictly construed. "The purpose of this rule of construction," as was said in Commonwealth v. Cooke, 50 Pa. 201, "is to prevent acts from being

brought within the scope of punishment, because courts may suppose they fall within the spirit of the law, though not within its terms. To create offenses by mere construction is not only to entrap the unwary, but to endanger the rights of the citizens."

The ninth assignment of error complains of the answer of the court to defendant's tenth point, as follows:

"That there is no evidence in the case which would warrant the jury in finding that had defendant agreed to accept the Huntingdon & Broad Top wooden cars of the capacity of sixty thousand pounds as the private or individual cars of the plaintiff, the latter would have purchased two hundred of these cars, and in the absence of evidence to warrant such a conclusion the plaintiff is not entitled to recover."

The answer of the court was:

"This is refused as stated, because the question as we look at it, is for the jury as to whether or not there was a contract entered into in good faith by Mr. Fraser for the plaintiff company."

The error in this answer has been sufficiently indicated in what we have already said. The point should have been affirmed. The ninth assignment of error is therefore sustained.

Another feature of the case that calls for expression of view, since another trial must result, is that which assails the jurisdiction of the court on the ground that it was disclosed by the evidence that the greater part of the cars, if not all of them, had they been acquired by plaintiff would have been employed in interstate shipments. In an opinion just handed down, in the case of the Puritan Coal Mining Company v. Pennsylvania Railroad Company, 237 Pa. 420, we have given full expression to our views, holding in that case that Federal and State jurisdictions were concurrent, for the reason that Congress had not legislated specifically with reference to the offense there charged. It is unnecessary to repeat

here what was there said. This case is ruled by that. In the absence of specific legislation by Congress of the offense here charged, whether in the first or second complaint, the jurisdiction of our own courts remains undisturbed.

We see no reversible error in the refusal of the court to allow a continuance of the case on defendant's motion because of the withdrawal of the receiver as party plaintiff.

For the reasons we have stated, and appellant's ninth assignment of error having been sustained, the judgment is reversed and a venire facias de novo awarded.