# Clark Brothers Coal Mining Co. *v.* Pennsylvania R. R. Co., Appellant.

*Carriers—Railroad companies—Discrimination as to car supply —Interstate commerce—Jurisdiction of federal and state courts— interstate commerce commission—Award of reparation.*

1. In an action against a railroad company to recover damages for unlawful discrimination against plaintiff in the distribution of coal cars, in violation of the Act of June 4, 1883, P. L. 72, where defendant contended that the jurisdiction of the court was ousted by a proceeding instituted by plaintiff before the interstate commerce commission, for redress of the same grievances for which the action was brought, in which proceeding orders had been issued forbidding the practices complained of, and awarding reparation to plaintiff, the court did not err in sustaining the jurisdiction of the state court, where it appeared that practically all the coal mined by plaintiff during the period covered by the action had been sold f. o. b. cars at the mines, and was therefore not subject to interstate commerce regulation, that the action was not brought for violation of any federal statute, or for breach of any order of the interstate commerce commission, but for violation of a duty imposed upon defendant as a common carrier by the state law, and where it further appeared that no proceedings had ever been taken to enforce the award of the commission, and it did not appear that the award had ever been paid.

2. An award of the interstate commerce commission is not a judgment in the sense that it concludes the enforcement of the claim on which it rests in a court having jurisdiction of the cause of action. The act of congress gives no such effect to an award

but simply makes it prima facie evidence of the facts contained therein in an action brought on it in a state or federal court. When introduced as evidence to support the claim it is, like other evidence, open to attack and may be wholly discredited.

Argued April 23, 1913. Appeal, No. 81, Jan. T., 1913, by defendant, from judgment of C. P. Clearfield Co., Dec. T., 1911, No. 148, on verdict for plaintiff in case of Clark Brothers Coal Mining Company v. Pennsylvania Railroad Company. Before BROWN, MESTREZAT, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for unlawful discrimination in the distribution of coal cars. Before SMITH, P. J.

The facts appear in the opinion of the Supreme Court, and in the following opinion of SMITH, P. J., sur defendant's motion for a new trial and for judgment non obstante veredicto:

In this case the plaintiff company, a corporation chartered under the laws of the State of Pennsylvania, sued the defendant company, also a Pennsylvania corporation, to recover compensation for alleged acts of discrimination under the Pennsylvania Act of June 4, 1883, P. L. 72, permitting treble damages to be recovered in such cases. The case was tried at a special term fixed for that purpose in November, 1912, and on the 25th day of November a verdict was returned by a jury finding single damages in the sum of $41,481.00, and also finding that there was discrimination practiced of such a character that it was entitled to recover treble damages under the Act in such case made and provided and therefore entitling it to a verdict in the sum of $124,443.00.

The two motions to be considered at this time raise a number of questions. The principal questions argued and to be considered in this opinion is that of jurisdiction of this court to entertain the action at all. The proofs offered and the verdict of the jury for the pur-

poses of this consideration may be said to establish the following facts:

First. That the defendant company, a common carrier, did practice unlawful discrimination against the plaintiff corporation in the matter of furnishing cars to its several mines, Falcons Nos. 2, 3 and 4 in Clearfield County and Falcons Nos. 5 and 6 in Indiana County.

Second. That for the period sued for, namely, between October, 1905, and April 30th, 1907, inclusive (excepting as to four months of 1906 during which a strike prevailed in the coal region), the plaintiff company suffered damages at the hands of the defendant company, assessed by the jury at the sum of $41,481.00.

Third. According to the proofs offered the unlawful discrimination practiced by the defendant company, a common carrier, was that of failure to furnish a fair and equal pro rata distribution of cars to the several mines of the plaintiff company.

Fourth. That according to the proofs offered and not in dispute, 95 to 98 per cent. of the coal sold by the plaintiff company was sold f. o. b. cars at the mines, and the claim as made, so far as it relates to coal unmined and not shipped because of the alleged discrimination, was based on a like percentage or that practically all of the coal so unmined and shipped would have been sold f. o. b. cars at the mines.

Fifth. That according to the proofs offered and not in dispute, the plaintiff company did make complaint before the interstate commerce commission against the defendant corporation, alleging an unfair rule of distribution and alleging actual discrimination against it as to its Falcon mines Nos. 2, 3 and 4 in Clearfield County, in favor of other shippers of bituminous coal in the region, which complaint was begun by a proceeding filed some time in 1907, after the period of action in this suit, and docketed in the proceedings of the interstate commerce commission as to No. 1111, as appears by defendant's Exhibit No. 3 in the testimony of this case.

That said complaint was so proceeded in, as appears by defendant's Exhibit No. 5, that the same was submitted January 30th, 1909, and decided March 7th, 1910, at which time the said interstate commerce commission filed an order in said case as follows:

"The cases being at issue upon complaints and answers on file, and having been duly heard and submitted by the parties, and full investigation of the matters and things involved having been had, and the commission having, on the date hereof, made and filed a report containing its conclusions thereon, which said report is made a part hereof; and it appearing that it is and has been the defendant's rule, regulation, and practice, in distributing coal cars among the various coal operators on its lines for interstate shipments during percentage periods, to deduct the capacity in tons of foreign railway fuel cars, private cars, and system fuel cars, in the record herein referred to as 'assigned cars,' from the rated capacity in tons of the particular mine receiving such cars and to regard the remainder as the rated capacity of that mine in the distribution of all 'unassigned' cars:

"It is ordered, That the said rule, regulation, and practice of the defendant in that behalf unduly discriminates against the complainants and other coal operators similarly situated and is in violation of the third section of the act to regulate commerce.

"It is further ordered, That the defendant be, and it is hereby, notified and required, on or before the 1st day of Nov. 1910, to cease and desist from said practice and to abstain from maintaining and enforcing its present rules and regulations in that regard, and to cease and desist from any practice and to abstain from maintaining any rule or regulation that does not require it to count all such assigned cars against the regular rated capacity of the particular mine or mines receiving such cars in the same manner and to the same extent and on

the same basis as unassigned cars are counted against the rated capacity of the mines receiving them.

"And it is further ordered, That the question of the damages claimed by the complainants in these proceedings in respect of the matters and things in said report found to be discriminatory be deferred pending further argument in the premises."

Sixth. That the same matter with respect to the reparation in award of damages was submitted April 20, 1911, and decided March 11, 1912, as appears from defendant's Exhibit No. 4, with the result that as to the said damages due to plaintiff company the following order was made:

"This case coming on to be further heard upon application for reparation, and having been submitted by the parties, and full investigation of the matters and things involved having been made, and the commission having, on the date hereof, made and filed a supplemental report containing its findings of fact and conclusions thereon, which said report, together with the report herein on March 7, 1910, 19 I. C. C., 392, and all the findings and conclusions in said reports, are hereby referred to and made a part hereof:

"It is ordered, That the above-named defendant be, and it is hereby authorized and directed to pay unto complainant, Clark Brothers Coal Mining Company, on or before the 1st day of June, 1912, the sum of $31,127.96, with interest thereon at the rate of 6 per cent. per annum from June 25, 1907, as reparation for defendant's discrimination in distribution of coal cars, which discrimination has been found by this commission to have been unlawful and unjust, as more fully and at large appears in and by said reports of the commission."

On the general question of jurisdiction of this court, it is conceded by the learned counsel for the defendant that we are bound by the decision of the Supreme Court of the State of Pennsylvania in the case of the Puritan

Coal Mining Company v. Pennsylvania Railroad Company, recently decided, 237 Pa. 420.

It is contended, however, on behalf of the defendant, that because of a series of proceedings before the interstate commerce commission, in a number of cases brought by parties before said commission, including the plaintiff company in this case, for the adjustment of certain alleged matters of car distribution and alleged discrimination, and against a number of railroads therein named, and which appear in the testimony in this case as defendant's Exhibits Nos. 3, 4, 5, 6, 7, 8, 9, and 10, this case is differentiated in the facts constituting a defense from the case of the Puritan Coal Mining Company. Not to go into detail with respect to these several orders of the interstate commerce commission, it is sufficient for the purposes of this case, as we believe, to say that none of the said orders of the interstate commerce commission are shown to antedate the period of the action in this case, the earliest being that of the Hocking Valley Railway Company decided July 11, 1907. Generally speaking, it is contended on behalf of the defendant company that the existence of these orders, especially that with reference to the Pennsylvania Railroad, decided in 1910, indicates that the interstate commerce commission have occupied the field and thereby ousted the jurisdiction of all State courts with reference to the subject matter therein passed upon. We, however, do not take the same view with respect to the decision of the Puritan Coal Mining Company case. We believe the decision of the Supreme Court in that case must be considered as having been decided with full knowledge of the fact that the interstate commerce commission had, in special cases brought to their attention, promulgated certain rules and orders controlling future car distribution; that is, distribution made subsequent to the date of the orders of the interstate commerce commission. The proof of this is that one of the cases cited by Mr. Justice Stewart, in his opinion, is that of Interstate

Commerce Commision v. Ill. Cent. R. R. Co., 215 U. S. 452, which case especially involved an interstate commerce commission order of distribution. In the Puritan case Mr. Justice STEWART, after quoting from decisions of the Supreme Court of the United States, thus summarizes: "We derive from this opinion these inevitable conclusions: (1) that where Congress prescribed a particular act, not in itself an offense at common law, jurisdiction with relation thereto attaches to the federal courts; (2) where the act is an offense at common law, and made so as well by State statute, in such case, except as other reasons may be shown, there is concurrent jurisdiction of it in the State courts; (3) that the Interstate Commerce Act does not attempt any more than does the common law to define what particular acts shall constitute unlawful discrimination, but commits that to the interstate commerce commission; (4) that when this commission has by its orders declared any particular practice or regulation observed by an interstate corporation as unreasonably discriminating, it is as though Congress has especially legislated with respect thereto, and such circumstance draws exclusive jurisdiction of the offense to the federal tribunal; (5) that except as to the thing the commission had defined and denounced as undue discrimination, the discrimination complained of may be adjudged by the State courts according to their own statute, or the common law as the case may be." The learned justice then proceeds to show how the commission has exercised its jurisdiction, especially citing the case of Interstate Commerce Commission v. Ill. Cent. R. R. Co., 215 U. S. 452, as an illustration of an adjudication which formulated general rules for the observance of all railroads; and holding in opinion that the regulation therein announced "is as much the law of the land as though written in the lines of the Interstate Commerce Act and that having been legislated upon by the commission exclusive jurisdiction with respect

thereto vests in the federal tribunal." In distinguishing the Puritan case the learned justice then says: "Here it is not complained that defendant had disregarded any order of the commission; nor has any order of the commission even remotely regulating the subject of the complaint here been shown. What is complained of is that the defendant having voluntarily adopted a system for the distribution of its cars which it must have regarded as just and equitable, and from which it makes no claim to be released, openly and flagrantly disregarded it by daily distributing to the Berwind-White Coal Company a much larger number of cars than its rating called for, while furnishing complainant with less than it was entitled to under its rating. The grouping of plaintiff's mines in a class with others for purposes of service; the determination of the total number of cars to be devoted to such service; the ratings of the several mines within the group and the pro rata of distribution, were not matters regulated by the order of the commission, but matters decided upon by the defendant company with a view to avoid prejudice to the shipper. Had the plaintiff been dissatisfied with the regulation it could have appealed to the commission to correct it; had its appeal been sustained and followed by an order of amendment or correction of the regulation, then, upon subsequent disregard of the regulation as amended, plaintiff's only forum for relief would have been the federal court, since in that case again Congress would have taken possession of the field. But there is nothing of that kind here; nothing but a case of discrimination pure and simple; not a specific offense created by the express terms of the federal statute, not an offense against any order of the commerce commission, but an offense which could fall within the federal statute and the common law as well, and so be held to have been legislated upon by Congress, only as the interstate commerce commission has so declared. Our own State statute rests for its authority on the police power of the State, and its sole object is

to prohibit common carriers which derive all their powers from the State, and have been granted these to the end that they may serve public necessity and convenience, from practicing undue and unreasonable discrimination between shippers in the service they are created to render. The exercise of this power in the way indicated is not interfered with by the Interstate Commerce Act in the absence of action by the commerce commission specifically directed against the particular matter complained of. The thing condemned by our State statute and by the common law was a purely incidental matter indirectly affecting interstate commerce, just as was the discrimination in the case of the Missouri Pacific Ry. Co. v. Larabee Flour Mills Co. (211 U. S. 612). The two cases on principle cannot be distinguished, and we but follow the plain guidance of that case in holding that the power of the state with respect to the subject matter of the present controversy remains undisturbed. It was not a question in the case whether the cars denied the plaintiff were intended for shipment within the state or beyond. It was sufficient that the offense was committed within the state."

The above quotation from the Puritan case is equally applicable to the facts in this case. The offense alleged here is that of discrimination pure and simple. No specific offense created by the express terms of the federal statute is alleged to have been violated. Neither is any offense against any order of the commerce commission set up as the basis of recovery. The period sued for between October, 1905, and April 30, 1907, antedates all general rules, regulations or orders of the interstate commerce commission which could by any construction be said to be applicable to the case in hand. We are clear, therefore, that the general proposition of a want of jurisdiction in the State court is not sustainable.

Now it is contended by the defendant's counsel, especially as to this case, that the plaintiff having filed its complaint with the interstate commerce commission

and having had not only a ruling or order defining that the practice of the defendant company was discriminatory, but having also so proceeded before the interstate commerce commission as that an award of damages had been made in favor of the plaintiff, it is barred from proceeding in this action. The learned counsel for defendant base their argument for this position on the opinion of Mr. Justice STEWART in the Puritan case, in which he subdivides his conclusions as to jurisdiction, and under the clauses 4 and 5 of said conclusions, which are as follows: "(4) that when this commission has by its orders declared any particular practice or regulation observed by an interstate corporation as unreasonably discriminating, it is as though congress had specially legislated with respect thereto, and such circumstance draws exclusive jurisdiction of the offense to the federal tribunal; (5) that except as to the thing the commission has defined and denounced as undue discrimination, the discrimination complained of may be adjudged by the State courts according to their own statutes, or the common law as the case may be." Counsel, hence, argues that this plaintiff, by its complaint as to the method and rule of distribution, recognized and subjected itself to the jurisdiction of the interstate commerce commission so as to draw exclusive jurisdiction to the federal tribunals. It contends further that the complainant in the Interstate Commerce case and the plaintiff in this case is obliged to proceed on its award, as pointed out by Sections 8, 9 and 16 of the Interstate Commerce Act. In other words, the contention is, that the action of the plaintiff, in thus resorting to the procedure prescribed by the Interstate Commerce Act in the cases in violations by carriers of the provisions of that act, subjected this controversy to the exclusive jurisdiction of the interstate commerce commission and by so doing rendered applicable to the situation the effective provisions of the Interstate Commerce Act. That, therefore, the

federal legislation is applicable, even under the principles laid down by Mr. Justice STEWART in the Puritan case, and hence that the jurisdiction of the State court has been ousted, except that under the commerce act suit may be brought in a State court to enforce the award. We are clear that this contention is not tenable in respect to the facts in this case, for, first, the period sued for and right of action accruing antedates any order of the interstate commerce commission; and, second, the suit here does not purport to recover damages for that which is purely interstate commerce. The things complained of, therefore, were not violations of any orders of the commission. If Mr. Justice STEWART'S opinion is conceded by the defendant to be the law, it is clear that in no way does he make any order of the commission oust jurisdiction of the State court for an offense antedating the order. His opinion is, that without some order of the commission the particular offense complained of in this case was not an offense against the Interstate Commerce Act. The terms of that act were too general to define what was an offense under it. It remained and was left for the interstate commerce commission to define and specifically name that which constituted discrimination. When it does so define and particularize the field is occupied so far as interstate commerce is concerned. That opinion does not hold, and neither does any opinion in the state or federal courts hold that such jurisdiction is exclusive in the federal tribunals, except as to interstate commerce. As to commerce wholly within the State the Interstate Commerce Act itself expressly, in one of its provisos, says that it does not apply to transportation wholly within the State. This is one of the important clauses or provisos of section one. Reading into the Interstate Commerce Act, therefore, the order of the commission in the Puritan case, No. 1111, simply creates that which by future conduct of the railroad company will be an offense cognizable in that court as to interstate com-

merce only. This question of the divided jurisdiction
of the courts with respect to inter and intrastate com-
merce is clearly recognized in both the state and fed-
eral tribunals: Wright v. B. & O. R. R. Co., 32 Pa.
Superior Ct. 5-12; Hillsdale Coal & Coke Co. v. R. R.
Co., 229 Pa. 61; Missouri Pacific Railway Co. v. Lara-
bee Flour Mills Co., 211 U. S. 612.

We do not understand that recent decisions of the
United States Supreme Court, handed down January
6th, 1913, modify the principles of the opinion in the
Missouri Pacific Railway Co. v. Larabee Flour Mills Co.,
last cited. These recent decisions simply reiterate the
exclusive jurisdiction of the United States courts with
respect to interstate commerce, and do not pretend to
broaden the jurisdiction of the United States courts to
that which is purely intrastate. In this respect, of course,
there is a wide divergence of contention in this case as to
what is and what is not intrastate commerce. According
to the undisputed testimony of the plaintiff's witnesses,
95 to 98 per cent. of the coal mined at its several mines
was sold by it f. o. b. cars at the mines. Irrespective of
the point of destination we have held in this case, as in
the Puritan case, that so far as the relation between the
plaintiff company and the defendant company to coal
sold f. o. b. cars at the mines was concerned it was an
intrastate transaction; that it did not become the sub-
ject of interstate commerce until actually in transit,
duly manifested to a point without the State. Cars, like
sidings or switch connections, are simply a facility of
transportation, absolutely necessary to the carrying on
of the bituminous coal trade. The plaintiff, as well as
the defendant corporations are State institutions, with
State charters and subject to State regulations. It is
only when in accepting commerce to transport without
the State the carrier becomes subject to other than
State laws and State courts. The coal mined in plaintiff
company's mines does not become, by the act of mining
and loading, the subject of interstate commerce until

actually manifested. After being loaded, no car is the subject of interstate commerce and only becomes so by being manifested to some point without the State. Even then, when so manifested without the State, it is only when the car containing the coal so manifested is actually in transit that it becomes the subject of interstate commerce. At that time the coal on the car as commerce is not under and subject to the control of the shipper, if sold f. o. b. cars at the mines. It is then the property of the vendee, subject only to his control and for which the shipper cannot maintain any action in case of loss in transit, or in case of a refusal by the vendee to accept, or in case of demurrage charged against it. If sold by the railroad company because of nonacceptance or because of demurrage charged against it, the shipper has no right of recovery. The railroad company owes no duty to the shipper and the relation of the parties with respect to the coal pertains wholly as between the railroad company and the buyer: Mull v. Pennsylvania Railroad Co., 38 Pa. Superior Ct. 416; Diehl v. McCormick, 143 Pa. 584; Dannemiller v. Kirkpatrick, 201 Pa. 218; Dentzel v. Island Park Assn., 229 Pa. 403. The question of jurisdiction with respect to coal shipped is decided squarely in this State in Wright v. B. & O. Railroad Co., 32 Pa. Superior Ct. 5-12. In that case the question, as far as jurisdiction was concerned, turned on the point or place where the plaintiff's relation to the coal terminated. If within the State, the relation of shipper to common carrier was not that of an interstate relation and left jurisdiction unquestioned in the State court. The United States authorities are to the same effect. Goods are not exports or in process of exportation until committed to a common carrier for transportation out of the State or started on such ultimate passage. When actually in transit to another state property becomes the subject of interstate commerce and ceases to be governed by domestic law with respect to taxes and begins to be governed by the national law of commerce regulation:

Coe v. Errol, 116 U. S. 517; Diamond Match Co. v. Ontonagon, 188 U. S. 82; Kelly v. Rhoads, 188 U. S. 1; P. & S. Coal Co. v. Bates, 156 U. S. 577; Brown v. Houston, 114 U. S. 622. The doctrine of Coe v. Errol, 116 U. S. 517, and the other cases above cited, are reaffirmed in Gulf, C. & S. F. R. Co. v. Texas, 204 U. S. 403. In that case a shipment of grain was made from Hudson, South Dakota, to Texarkana, Texas, via Kansas City, over certain railroads. At Texarkana it was transshipped to Goldthwaite, Texas, over two other railroads. Under a Texas statute a penalty was inflicted upon the railroad company making ultimate delivery, for rate extortion. The railroad resisted on the ground that the shipment having originated at Hudson, South Dakota, was an interstate one and not subject to the regulation of the state law. The Supreme Court held that the interstate character of the transportation ceased on arrival of the corn at Texarkana and that thereafter between points in Texas the railway company was subject to the state law. The same doctrine is reasserted in Southern P. Terminal Co. v. Interstate Commerce Commission, 219 U. S. 498. Mr. Justice Mc-Kenna, at page 527, says: "Goods are in interstate and necessarily as well in foreign commerce when they have actually started in the course of transportation to another state or been delivered to a carrier for transportation."

It follows, therefore, as a logical sequence that until actually started or until actually delivered they are not in interstate commerce. A car at a tipple, duly loaded with coal, not manifested, is not actually delivered. Another case, which perhaps more clearly than any other case shows when coal is subject to the laws of the United States controlling interstate traffic is, United States v. D. & H. Canal Co., et al., 213 U. S. 366. This case involved the interpretation of the commodities clause of the Hepburn Act prohibiting railroad companies from transporting between states, etc., any article or com-

modity manufactured, mined or produced by or under its authority. It is there held by Mr. Chief Justice WHITE, that the said commodities clause did not apply to coal mined and shipped, where the railroad company so mining and shipping had "in good faith before the transportation dissociated itself from said article or commodity." In other words, he held that if at the time of transportation the coal was not owned, in whole or in part, by the transporting carrier, the prohibitive clause of the Hepburn Act did not apply. In effect, therefore, the case of the United States v. D. & H. C. Co., 213 U. S. 366, is a clear recognition of the principle on which the decision in this case is based, namely, that the plaintiff having sold practically all of its coal f. o. b. cars at the mines, the coal so sold was not coal subject to interstate commerce regulations and was expressly excluded from the Interstate Commerce Act by the very letter of the act. This being so, it follows conclusively that this court had jurisdiction not only of the persons but of the subject matter of this controversy in any original action which the said plaintiff saw fit to bring in this court, either at common law or under our statutes. Did it lose this right, however, by proceeding originally in a United States tribunal, namely, the interstate commerce commission? It did become the complainant before said commission. It did get an award of damages for what we understand to be practically the same subject matter. It did not, however, pursue that award to recovery. Neither is there any allegation that the award has been paid. Had it been paid by the defendant company another and different question might arise. The plaintiff saw fit either to abandon said action or to let it remain quiescent and to pursue its rights in this court, a State tribunal. The learned counsel for defendant contends that this suit is barred because of the recovery of the award. It is, of course, well settled that a judgment obtained in a court of competent jurisdiction is a bar to a second suit, whether in law or equity: Car-

ville v. Garrigues, 5 Pa. 152; Taylor v. Cornelius, 60 Pa.
187; Williams v. Row, 62 Pa. 118. An award of arbi-
trators, after reference thereto, is equally binding:
Lloyd v. Barr, 11 Pa. 41; Garvin v. Dawson, 13 S. & R.
246. The above cases cited from the brief of the learned
counsel for the defendant are conclusive of the prin-
ciples therein set forth, but the argument made there-
from to the effect that the award of the interstate com-
merce commission is equally a bar as is a judgment, a
decree in equity or an award of arbitrators, is not sus-
tainable on any authority. The language of the Inter-
state Commerce Act does not make the award a judg-
ment enforceable by the commission or even by a court.
It does make that award, when used as the basis of a suit
in a United States court, a prima facie finding of the
facts therein stated. An amendment to the original
Interstate Commerce Act gives jurisdiction, after action
by the interstate commerce commission, to state courts,
but does not lay down even the principle that the award
is prima facie evidence of anything. This award of
the interstate commerce commission is clearly distin-
guishable from a judgment in every respect. It is not
enforceable by any process. It does not become a lien
upon any property of a defendant. It does not purport
to be final and conclusive in any way. If used even as
prima facie evidence of what it purports to contain,
it is subject to attack when so used in a duly established
court. Such attack could well raise the questions on
which we base this opinion; first, that the commission
exceeded its jurisdiction in making such an award for
acts committed by the defendant prior to its order or
decree; or, second, the defendant company could make
a defense against the award alleging want of jurisdic-
tion in the interstate commerce commission on the
ground that the coal, which is the subject matter of the
award, was sold f. o. b. cars at the mines and hence
not interstate commerce. Thus using the very argu-
ments on which we base the contention in the opinion in

this case for the right of jurisdiction in the State courts. If paid, it of course would have the effect of a bar, just as would a settlement or any other adjustment privately or publicly made. But it is clear that it is not and was not intended to have the effect of a judgment, and hence it cannot be said that the parties had their day in court before a court of competent jurisdiction. To be used as a bar or as the subject matter of a plea of res adjudicata there must be the award, unappealed from, of a duly constituted tribunal, the judgment of a court of competent jurisdiction, or the decree following a bill in equity, duly enforceable by the regular recognized processes of the court or tribunal issuing the award, the judgment or the decree. The interstate commerce commission is not a court and does not purport so to be. Its functions are rather administrative than judicial. In its proceedings it does not necessarily follow or strictly observe the forms of legal procedure. The law provides that the commission must itself become an actor or party in a court of justice to enforce its decrees or sustain them when appealed from to the court. Hence, we conclude that this award cannot be used as a bar and could only be so used if paid by defendant, which is not alleged in this case.

No other matters urged as a reason for new trial are brought specifically to the attention of the court. A number of contentions were raised in the course of the trial and by carefully drawn points submitted by counsel for defendant. All of these were, we believe, fully disposed of in the final charge to the jury. The verdict can hardly be said to be excessive, in view of the fact that the interstate commerce commission awarded the same plaintiff, for only three of its mines, for the same period, the sum of $31,127.96, while this suit is for two other mines in addition thereto. The award of $41,-480.00, as single damages, is apparently therefore not far in excess of that which the seven learned gentlemen constituting the interstate commerce commission de-

cided, on what we presume was practically the same testimony to have been the damages sustained by the plaintiff.

On the whole case, therefore, we are of opinion that the verdict should stand.

Verdict for plaintiff for $124,443, and judgment thereon. Defendant appealed.

*Errors assigned,* among others, were in refusing to dismiss the action for want of jurisdiction, various rulings of the trial judge, and the refusal of the court to enter judgment for defendant non obstante veredicto.

*Francis I. Gowen* and *John G. Johnson,* with them *Hazard Alex. Murray, Henry Wolf Bikle, James P. O'Laughlin* and *Thomas H. Murray,* for appellant.

*A. M. Liveright* and *A. L. Cole,* for appellee.

OPINION BY MR. JUSTICE MESTREZAT, June 27, 1913:

This is an action of trespass to recover damages for alleged unlawful discrimination in the distribution of coal cars under our Act of Assembly of June 4, 1883, P. L. 72, 4 Purd. 3906. We have carefully examined the large volume of testimony submitted and are satisfied that the essential elements of the plaintiff's case were made out by evidence which required it to go to the jury. There was considerable conflict between the testimony of the plaintiff and that introduced by the defendant as to the capacity of the plaintiff's mines, the actual number of cars supplied to them, the proportion between the supply to the plaintiff company and to other companies which were alleged to have been unlawfully favored, the extent to which plaintiff would have been entitled to share in the alleged oversupply of cars to the favored companies, and the measure of damages, but the testimony was submitted to the jury by the learned trial judge in a clear and comprehensive charge

in which we can find no reversible error. We must, therefore, regard the jury's finding on these and the other questions of fact involved in the case as conclusive. The learned trial judge was appealed to by the defendant company to correct the errors complained of by it in the jury's findings of fact, but after a complete review of the testimony in a clear and well-considered opinion, he held that the findings of the jury were sustained by the evidence and declined to disturb the verdict.

As in Sonman Shaft Coal Company v. Pennsylvania Railroad Company, 241 Pa. 487, the judgment was obtained against the defendant in the present case for failure to furnish an adequate supply of coal cars, and, as here, the question of the jurisdiction of a State court to determine the action was challenged. The contention of the defendant company, which is the appellant here, is that in respect to the distribution of its cars to the several mines on its road it is subject exclusively to the obligations and prohibitions of the Interstate Commerce Act, and that if it has failed to observe or conform to these to the injury of the shipper, his recourse is to the federal tribunals designated by the Interstate Commerce Act as those before which actions of such a character can be maintained. We have sustained the jurisdiction of our courts in the Sonman case, holding that the question has been ruled in Puritan Coal Mining Company v. Pennsylvania Railroad Company, 237 Pa. 420, and Walnut Coal Company v. Pennsylvania Railroad Company, 237 Pa. 410. If we correctly understand the defendant's position, it is conceded that the Puritan case sustains the jurisdiction in the present case unless the proceedings instituted against certain railroad companies by the plaintiff and other shippers before the interstate commerce commission for the adjustment of car distribution and alleged discrimination differentiate it from that case. It is

claimed that the orders issued by the commission in these proceedings have ousted the jurisdiction of the state courts in matters dealt with by the commission. This contention is not tenable in view of the fact that the action was brought under our Act of 1883 to recover for unlawful discrimination in the distribution of freight cars, and the orders of the interstate commerce commission have no relevancy to or bearing upon the question raised in the record for adjudication. In his opinion refusing judgment non obstante, the learned trial judge, after quoting freely from the opinion of this court in the Puritan case to sustain his view on this branch of the present case, pertinently says: "The above quotation from the Puritan case is equally applicable to the facts in this case. The offense alleged here is that of discrimination pure and simple. No specific offense created by the express terms of the federal statute is alleged to have been violated. Neither is any offense against any order of the commerce commission set up as the basis of recovery. The period sued for between October, 1905, and April 30, 1907, antedates all general rules, regulations or orders of the interstate commerce commission which could by any construction be said to be applicable to the case in hand. We are clear, therefore, that the general proposition of a want of jurisdiction in the State court is not sustainable."

We do not regard as sound the contention that the plaintiff company is precluded from prosecuting this action because it complained to and had a ruling by the interstate commerce commission against the discriminatory acts of the defendant. It appears that practically all the coal involved in this action was sold f. o. b. cars at the mines, and is, therefore, not subject to interstate commerce regulation. This is necessarily so on principle and seems to be the effect of the numerous decisions of the Supreme Court of the United States which are cited and commented on in the opinion of the learned court below. It may also be suggested that the

present action is not based on a violation of a federal statute or on any rule or regulation of the interstate commerce commission but on a tort committed against the plaintiff in violation of the statutory duty of the defendant company as a common carrier. It is, therefore, not apparent how the orders or regulations of the interstate commerce commission can deprive the State court of jurisdiction in the present action.

We do not think the award of damages to the plaintiff by the interstate commerce commission prevents a recovery in this case. Had the award been enforced by a suit in a federal court, the defendant's contention that it is a defense to the present action might have some force. But it is not alleged that any proceedings were taken before the commission to enforce the award or that it has been paid. A judgment of a court of competent jurisdiction is a bar to further proceedings on the claim in any tribunal. But an award of the interstate commerce commission is not a judgment in the sense that it concludes the enforcement of the claim on which it rests in a court having jurisdiction of the cause of action. The act of congress gives no such effect to an award but simply makes it prima facie evidence of the facts contained therein in an action brought on it in a state or federal court. When introduced as evidence to support the claim it is, like other evidence, open to attack and may be wholly discredited. The award by the interstate commerce commission in this case is not a defense to this action.

The other and minor questions raised on the trial below and on this appeal have been satisfactorily considered and disposed of in the opinion of the learned trial judge in overruling the motion for a new trial and for judgment non obstante, and further discussion here is unnecessary.

The judgment is affirmed.